No. 21-13528-F

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA**,
Appellee,

v.

**JAY DIAMOND**,
Appellant.

On appeal from the United States District Court
for the Northern District of Georgia

**BRIEF OF APPELLANT
JAY DIAMOND**

REBECCA SHEPARD
TAKIYA J. WHEELER
Federal Defender Program, Inc.
101 Marietta Street, NW, Suite 1500
Atlanta, GA  30303
(404) 688-7530
Rebecca_Shepard@FD.org
Takiya_Wheeler@FD.org

Counsel for Jay Diamond

No. 21-13528-F
United States v. Jay Diamond

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to 11th Cir. R. 26.1-2(a), counsel certifies that the following have an interest in the outcome of this appeal:

Acosta, Miguel R., Assistant United States Attorney

Batten, Sr., Hon. Timothy C., Chief United States District Judge

Baverman, Hon. Alan J., Former United States Magistrate Judge

Buchanan, Ryan K., United States Attorney

Chaiken, Tal C., Assistant United States Attorney

Diamond, Jay, Appellant

Erskine, Kurt R., Former United States Attorney

Kearns, Stephanie A., Executive Director, Federal Defender Program

Pak, Byung J., Former United States Attorney

Sharkey, Kimberly, Former Attorney for Appellant

Shepard, Rebecca, Attorney for Appellant

Sommerfeld, Lawrence R., Assistant United States Attorney

United States of America, Appellee

Vineyard, Hon. Russell G., United States Magistrate Judge

Wheeler, Takiya J., Attorney for Appellant

Winchester, Matthew, Former Attorney for Appellant

Zimmerman, Lawrence, Former Attorney for Appellant

No. 21-13528-F
United States v. Jay Diamond

---

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

No publicly traded company or corporation has an interest in the outcome of this case or of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Diamond requests oral argument. This appeal raises several issues stemming from Mr. Diamond's conviction following a two-day jury trial. This case involves important constitutional and evidentiary errors, and oral argument would be helpful to the just resolution of this appeal and significantly enhance the decision-making process.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement..... C-1

Statement Regarding Oral Argument.................................................................i

Table of Citations .......................................................................................... iv

Statement of Jurisdiction................................................................................1

Statement of the Issues ..................................................................................2

Statement of the Case ....................................................................................3

      A.      Course of Proceedings and Disposition Below.............................3

      B.      Statement of Facts......................................................................3

            1.      The traffic stop.................................................................3

            2.      Pretrial litigation .............................................................5

            3.      Jury selection: *Batson* challenge..................................6

            4.      Trial testimony..............................................................12

            5.      Motion for judgment of acquittal .....................................16

            6.      Jury charges..................................................................17

            7.      The verdict....................................................................19

      C.      Standard of Review ....................................................................19

Summary of the Argument............................................................................21

Argument and Citation of Authority.............................................................23

I.      The District Court Erred in Denying Mr. Diamond's Rule 29
      Motion for a Judgment of Acquittal Because the Evidence was
      Insufficient ...............................................................................23

      A.      The charged offenses require proof of three elements ...............24

B.      The government failed to present evidence that Mr. Diamond "acted as such" ........................................................27

C.      Even if the court did not err in denying the motion, there was insufficient evidence to support a conviction ............34

II.     The District Court Erred in Denying Mr. Diamond's *Batson* Challenge ..........................................................................36

III.    The District Court Abused Its Discretion by Failing to Give Mr. Diamond's Requested Jury Instructions ..........................................42

A.      Mr. Diamond's requested "acted as such" instruction ...............42

B.      Mr. Diamond's requested lesser-included instruction ...............46

IV.     The District Court Abused Its Discretion When Denying Mr. Diamond's Motion to Suppress Evidence of Prior Alleged Acts ........................................................................48

A.      Knoxville anniversary trip. ..............................................50

B.      RV Camper's Inn. ..........................................................50

C.      Home Depot. ...............................................................51

D.      The laundry room incident. .............................................51

E.      Ms. Diamond's 404(b) testimony should have been excluded. ...................................................................52

Conclusion ..........................................................................53

Certificate of Compliance and Service ..........................................54

# TABLE OF CITATIONS

## Federal Cases

*Adkins v. Warden, Holman CF*,
    710 F.3d 1241 (11th Cir. 2013) .........................................................37

*Ali v. Hickman*,
    584 F.3d 1174 (9th Cir. 2009) ..........................................................38

*Baas v. United States*,
    25 F.2d 294 (5th Cir. 1928) .........................................................25, 26

*Batson v. Kentucky*,
    476 U.S. 79 (1986) ................................................................... passim

*Bonner v. City of Prichard*,
    661 F.2d 1206 (11th Cir. 1981) (en banc) .......................................25

*Holloway v. Horn*,
    355 F.3d 707 (3d Cir. 2004) .............................................................42

*Jackson v. Virginia*,
    443 U.S. 307 (1979) .........................................................................23

*Lamar v. United States*,
    241 U.S. 103 (1916) .........................................................................28

*Miller-El v. Crockrell*,
    537 U.S. 322 (2003) .........................................................................41

*Miller-El v. Dretke*,
    545 U.S. 231 (2005) .........................................................................38

*Snyder v. Louisiana*,
    552 U.S. 472 (2008) .........................................................................37

*United States v. Alvarez,*
    567 U.S. 709 (2012) ........................................................27

*United States v. Bakhtiari,*
    913 F.2d 1053 (2d Cir. 1990).............................................29

*United States v. Barnow,*
    239 U.S. 74 (1915) .....................................................16, 28

*United States v. Beckles,*
    565 F.3d 832 (11th Cir. 2009) ...........................................24

*United States v. Bonin,*
    932 F.3d 523 (7th Cir. 2019) ............................................30

*United States v. Campa,*
    529 F.3d 980 (11th Cir. 2008) ...........................................19

*United States v. Cornillie,*
    92 F.3d 1108 (11th Cir. 1996) ...........................................20

*United States v. David,*
    803 F.2d 1567 (11th Cir. 1986) .........................................36

*United States v. Diaz,*
    26 F.3d 1533 (11th Cir. 1994) ...........................................37

*United States v. Emerson,*
    47 F.3d 1171 (6th Cir. 1995) .......................................30, 34

*United States v. Gayle,*
    967 F.2d 483 (11th Cir. 1992) ..........................16, 17, 30, 32

*United States v. Gumbs,*
    964 F.3d 1340 (11th Cir. 2020) .........................................46

*United States v. Gutierrez,*
  745 F.3d 463 (11th Cir. 2014) ..........................................................................46

*United States v. Hamilton,*
  276 F.2d 96 (7th Cir. 1960) ..............................................................................30

*United States v. Harmon,*
  496 F.2d 20 (2d Cir. 1974)..........................................................................26, 28

*United States v. Holmes,*
  814 F.3d 1246 (11th Cir. 2016) ........................................................................19

*United States v. Jernigan,*
  341 F.3d 1273 (11th Cir. 2003) ........................................................................49

*United States v. Johnson,*
  873 F.2d 1137 (8th Cir. 1989) ..........................................................................42

*United States v. Kimberlin,*
  781 F.2d 1247 (7th Cir. 1985) ..........................................................................18

*United States v. Lampley,*
  68 F.3d 1296 (11th Cir. 1995) ..........................................................................20

*United States v. Larson,*
  125 F. Supp. 360 (D. Alaska 1954) ..................................................................28

*United States v. Lee,*
  68 F.3d 1267 (11th Cir. 1995) ..........................................................................20

*United States v. Lepowitch,*
  318 U.S. 702 (1943) ..........................................................................................29

*United States v. Lively,*
  803 F.2d 1124 (11th Cir. 1986) ........................................................................43

*United States v. Louis,*
861 F.3d 1330 (11th Cir. 2017) ................................................................23, 35

*United States v. Martinelli,*
454 F.3d 1300 (11th Cir. 2006) ................................................................19, 20

*United States v. Mayweather,*
991 F.3d 1163 (11th Cir. 2021) ........................................................................43

*United States v. Opdahl,*
930 F.2d 1530 (11th Cir. 1991) ................................................................43, 45

*United States v. Parker,*
699 F.2d 177 (4th Cir. 1983) ...........................................................................29

*United States v. Rippee,*
961 F.2d 677 (7th Cir. 1992) ...........................................................................30

*United States v. Roe,*
606 F.3d 180 (4th Cir. 2010) ....................................................................29, 34

*United States v. Rosser,*
528 F.2d 652 (D.C. Cir. 1976) ..................................................................26, 28

*United States v. Thomas,*
916 F.2d 647 (11th Cir. 1990) .........................................................................24

*United States v. Tomsha-Miguel,*
766 F.3d 1041 (9th Cir. 2014) .........................................................................30

*United States v. Veltmann,*
6 F.3d 1483 (11th Cir. 1993) ...........................................................................49

*United States v. Wade,*
962 F.3d 1004 (7th Cir. 2020) ............................................................27, 30, 34

*United States v. Walker*,
  490 F.3d 1282 (11th Cir. 2007) ........................................................36

*United States v. Williams*,
  197 F.3d 1091 (11th Cir. 1999) ........................................................46

**Federal Statutes**

18 U.S.C. § 701 ..............................................................................17, 46

18 U.S.C. § 912 ................................................................................ passim

18 U.S.C. § 1001 .................................................................................. 29

18 U.S.C. § 3231 ...................................................................................1

18 U.S.C. § 3742 ...................................................................................1

28 U.S.C. § 1291 ...................................................................................1

Fed. R. App. P. 4 ...................................................................................1

Fed. R. App. P. 32(a) ..........................................................................54

Fed. R. Crim. P. 29 ............................................................... 2, 16, 23, 24

Fed. R. Crim. P. 31 ............................................................................46

Fed. R. Evid. 404(b) ...................................................................... passim

**Additional Authority**

Justice Michael B. Hyman, *Implicit Bias in the Courts*,
    102 ILL. B.J. 40 (2014)..........................................................................40

Michele Goodwin, Erwin Chemerinsky, *Pregnancy, Poverty, and
the State of Poverty of Privacy Rights by Khiara M. Bridges,
Stanford University Press, 2017*,
    127 YALE L.J. 1270 (2018)...................................................................40

Robin K. Magee, *The Myth of the Good Cop and the Inadequacy
of Fourth Amendment Remedies for Black Men: Contrasting
Presumptions of Innocence and Guilt*,
    23 CAP. U. L. REV. 151, 209-10 (1994) ............................................40

Michael J. Raphael & Edward J. Ungvarsky, *Excuses, Excuses:
Neutral Explanations Under* Batson v. Kentucky,
    27 U. MICH. J.L. REF. 229, 246-50, 266-67 (1993)...........................38

No. 21-13528-F

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

───────────────

**UNITED STATES OF AMERICA**,
Appellee,

v.

**JAY DIAMOND**,
Appellant.

───────────────

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case under 18 U.S.C.
§ 3231 because an indictment was filed charging Mr. Diamond with one or
more federal crimes. This is a direct appeal from an order and judgment of
the district court, which constitutes a final order disposing of all the
parties' claims in this case. The Court of Appeals has jurisdiction over this
appeal under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Mr. Diamond filed the
notice of appeal on October 7, 2021 within 14 days of the entry of the
district court's judgment and commitment order. FED. R. APP. P. 4(b)(1)(A).

1

## STATEMENT OF THE ISSUES

I.      Whether the district court erred in denying Mr. Diamond's motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 when the government failed to present evidence that Mr. Diamond committed an overt act, which was a necessary element for the offenses charged.

II.     Whether the district court erred in denying Mr. Diamond's challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), to the government's use of peremptory strikes to remove potential jurors who were Black, when the government failed to provide justification for the strikes based upon permissible race-neutral criteria.

III.    Whether the district court abused its discretion by failing to instruct the jury on the term "acted as such" and on a lesser-included offense as Mr. Diamond requested.

IV.     Whether the district court abused its discretion by denying Mr. Diamond's motion to suppress evidence of alleged prior bad acts, unrelated to the charged conduct, pursuant to Federal Rule of Evidence 404(b).

## STATEMENT OF THE CASE

### A.    Course of Proceedings and Disposition Below

Jay Diamond was charged in a superseding federal indictment with two counts of impersonating a federal officer and employee, based upon conduct that occurred on August 23, 2018. (Doc. 37). Following a two-day jury trial, he was found guilty on both counts on May 27, 2021. (Doc. 153). In a hearing held on September 29, 2021, he was sentenced to time served followed by a year of supervised release, and the district court issued its judgment order on October 5, 2021. (Docs. 172, 173). Mr. Diamond timely filed his notice of appeal on October 7, 2021. (Doc. 174).[1] Mr. Diamond has completed his sentence and term of supervision. Notably, this appeal challenges Mr. Diamond's conviction, not the sentence imposed.

### B.    Statement of Facts

#### 1.    The traffic stop

On August 23, 2018, Jay Diamond was driving on I-185 in Troup County, Georgia and was pulled over by Troup County Sheriff's Deputy William Baker. (Doc. 134 at 11). Deputy Baker approached the passenger side of the car to conduct a traffic stop. (*Id*. at 12). Before Deputy Baker could tell Mr. Diamond the reason for the stop, Mr. Diamond began telling Deputy Baker that he was headed to recover his wife's stolen vehicle. (*Id*.). Mr. Diamond told Deputy Baker that he was on the way to repossess a car

---

[1] The district court subsequently filed an amended judgment order to correct the special assessment, which was $200. (Doc. 177).

his wife had sold to someone who had not made any car payments in weeks. (*Id*. at 49). Mr. Diamond also told Deputy Baker that he was an air marshal and a senior air marshal. (*Id*. at 12-13). After Mr. Diamond stated that he was an air marshal, Deputy Baker asked if he had identification, and Mr. Diamond presented a badge that displayed the words "United States Federal Air Marshal." (*Id*. at 71). Mr. Diamond explained more about the situation with his wife's car, but did not ask Deputy Baker to do anything in regards to the stop or a potential ticket. Deputy Baker went to his vehicle to run Mr. Diamond's license and investigate his air marshal claims. (*Id*. at 16, 55). Deputy Baker called for backup to assist him. (Doc. 134 at 16).

Deputy Adam Richardson arrived at the scene upon request from Deputy Baker. (Doc. 188 at 94). Deputy Baker told Deputy Richardson what had transpired, including that the badge was fake. (*Id*.). Deputy Richardson approached Mr. Diamond and asked to see the badge. (*Id*. at 96). Mr. Diamond provided the badge and told Deputy Richardson that it was an honorary badge and that he is an assistant to the air marshal. (*Id*.). Mr. Diamond was then arrested by the Troup County Officers on state charges of impersonating an officer. (*Id*.). Both deputies' interaction with Mr. Diamond were audio and video recorded on their vehicles' dash cameras. (*See id*. at 94-95; Doc. 158).

Mr. Diamond was charged in a federal indictment with one count of falsely impersonating a federal officer, in violation of 18 U.S.C. § 912. (Doc.

1). On May 1, 2019 federal agents arrested Mr. Diamond. (Doc. 189 at 171). He was subsequently charged in a superseding indictment, which added a second count of false impersonation based upon the same incident. (Doc. 37).

## 2.    Pretrial litigation[2]

Prior to trial, the government filed notice of its intent to introduce testimony from Christy Diamond, Mr. Diamond's ex-wife, pursuant to Federal Rule of Evidence 404(b). (Docs. 121, 128). The anticipated testimony included three prior instances where Christy recalled Mr. Diamond getting discounts based on the false pretenses that he was a U.S. Marshal or member of the military: (1) an anniversary trip in Knoxville, Tennessee, (2) a family vacation at an RV park in Panama City Beach, Florida, and (3) Home Depot. (*Id.*). Additionally, the proposed testimony included an instance where Christy Diamond found the badge while doing laundry and confronted him. (*Id.*).

Defense counsel moved to preclude the 404(b) evidence, arguing that it was irrelevant to the issues at trial and purely propensity evidence. (Doc. 124). At the pretrial conference, the court ruled in favor of the government,

---

[2] The pretrial litigation in this case included, from Mr. Diamond, a motion to suppress and motion in limine raising several issues, and, from the government, a motion in limine raising several issues and notice of intent to introduce Rule 404(b) evidence.  (Docs. 16, 120-123, 128). There was also extensive litigation on the issue of bond. For brevity, this brief only discusses the pretrial litigation at issue on appeal.

admitting all the 404(b) evidence the government sought to introduce. (Doc. 186 at 29-33).

### 3.    Jury selection: *Batson* challenge

After jury selection and before trial testimony, defense counsel made a *Batson* challenge based on gender and race. (Doc. 188 at 75-76). Defense counsel argued that the government made five out of six peremptory strikes—against prospective Jurors 27, 22, 21, 11, and 15—based on race and/or gender. (*Id*. at 76). Three of the five prospective jurors struck were Black, and four of the five jurors struck were women. (*Id*.). Defense counsel requested that the government provide race- and/or gender-neutral reasons for their strikes. (*Id*.).

The court inquired whether defense counsel made a *prima facie* case, and defense counsel argued that they made their showing. (*Id*.). The court then asked the government to provide race- and gender-neutral reasons for the strikes for all five jurors, addressing the gender-based challenge first. (*Id*. at 77). The government responded with the following reasons for striking Jurors 11, 21, 22, and 27:

> GOVERNMENT: Juror number 11 had some college. She was divorced. She had two sons, 47 and 44. She served on a jury 18 months in Dade County Florida in the '90's. It was something about her demeanor, Your Honor, along with her job as a daycare worker. Those were really the two primary reasons why we decided to strike her.
>
> []

GOVERNMENT: Juror 21, it was her degrees as an English teacher and both a B.A. and a Masters in English that were the reasons why we decided to strike her.

THE COURT: What is it about the multiple degrees in the Humanities that disturbs the government?

GOVERNMENT: Nothing necessarily disturbed the government, but --

THE COURT: Or made her less desirable?

GOVERNMENT: It made her less desirable. Between her -- the two degrees and her career as an English teacher, we thought that she might be simply, you know, too liberal for our jury.

[]

GOVERNMENT: Juror number 22 had the issue of her father having been convicted of sexual assault and that was very concerning to us.

[]

GOVERNMENT: 27, her demeanor. She did not appear to us as if she really wanted to be here. She was very kind of nonchalant in her questions and her posture. And it appeared to us that she would prefer to be somewhere else.

(Doc. 188 at 77-78).

Defense counsel did not add anything additional to the record with respect to Jurors 21 and 22. (*Id*. at 79). Notably Juror 2, a selected juror, was a former teacher with a bachelor's degree in communications and a master's degree in education. (*Id*. at 21). As to Jurors 11 and 27, defense counsel responded that the government's reasons as to why it struck these

7

jurors—namely their demeanors—are not race-neutral reasons. (*Id*.).
Defense counsel noted that both jurors, who were Black women, were
forthcoming and answered questions thoroughly. (*Id*.). The court inquired
whether there were any male jurors struck the same way. (*Id*.). Defense
counsel responded that the government had not suggested so. (*Id*. at 80).

The court rejected Mr. Diamond's *Batson* challenge with respect to the
gender-based claim and found the government's reasons for striking the
jurors were not inherently discriminatory on gender. (*Id*.).

The court then asked the government to address the race-based claim
for Jurors 11, 15, and 27:

> COURT: Let's talk about with respect to race. The government
> struck three Black jurors that the defendant is complaining
> about, I mean complaining about the striking, and those are
> Jurors 11, 15, and 27. I would like to hear from Mr. Acosta as to
> why number 11 was struck. You already explained that her
> demeanor and job as a daycare worker were troubling to the
> government, so I don't think there is anything else to say about
> number 11, unless I am missing something.  So then we will go
> with -- we will talk about Juror number 15, who was a Black
> male. That is juror -- his name is Travis Daniel. I wrote down that
> he had a high school education and was unmarried and had no
> kids. He worked as a packer at a company called TRC Staffing.
> What would you tell us about that strike, Mr. Acosta?
>
> GOVERNMENT: There were a few things. I mean, again, I
> would have to reference his demeanor. He kind of just seemed
> as if he was the type of guy that was kind of hanging out with
> his buddies. I understood him to say that he would be employed
> soon, that while he worked for a packing cleaning company, that
> he was not currently employed at the time, which I found to be

8

problematic. He said he had done material handler aircraft as his prior job.

THE COURT: And I stand corrected regarding his employment status, but go ahead.

GOVERNMENT: But it was his demeanor that he kind of seemed to us as if he would rather just be kind of hanging out with his buddies playing video games, and the fact that he was not currently employed and did not sound like he had been employed for some time, those were the -- those were some of the issues that popped up for us.

THE COURT: And last is Juror number 27. . . .

GOVERNMENT: I mentioned that she didn't seemed to have any interest in being here. She also -- that could be because she has five kids and is not married -- she is married, but she has five kids. And so --

THE COURT: Why would somebody have that many kids? But go ahead.

GOVERNMENT: You got six, right? That is what I was told.

THE COURT: Yes, the record should reflect that.

GOVERNMENT: Yes, sir. So it was the fact that she has all of those children, along with the fact that she just didn't seem to want to be here, you know, there is also the fact of -- I looked at, in making a lot of the challenges, the way -- the seriousness with which they took their responsibilities here, which has to do with did they show up, presenting well. She had a hooded sweatshirt on as opposed to some of the other jurors who had jackets, and it is the suggestion that I would rather be somewhere else than sitting here with everyone else.

(Doc. 188 at 80-82).

Defense counsel responded to the government's reasons for striking Juror 27 by mentioning that nothing in the record suggested that Juror 27's family responsibilities would interfere with serving on the jury or that she would not want to be present. (*Id*. at 83). The court noted that there may not be a comparator on the panel with five kids, and defense counsel responded by noting that there were multiple jurors with several children. (*Id*.).[3]

Defense counsel noted that the government's mention of Juror 27 wearing a hoodie is a race-baited term—associating hoodies with Black individuals. (*Id*.). Defense counsel further noted that the government initially said Juror 27 was unmarried with five kids before correcting that she was in fact married. (*Id*.). Unmarried woman with multiple children is yet another stereotype associated with Black women. (*Id*.).

The government responded by stating that he is a Latino male who wears hoodies and is not sure how hoodies is a race-baited term. (*Id*. at 84). The government explained that they are supposed to look at the entire demeanor of a potential juror, including the way they dress and answer questions. (*Id*.). The government also stated that there is really no opportunity for the lawyers to ask any questions and to follow up, and that he would have done so if he had the opportunity to. (*Id*.).

---

[3] Selected Jurors 1, 3, and 26 responded to the court's questionnaire that they had three children, and selected Juror 10 responded that he had four children. (*Id*. at 18, 22, 33, 39).

The court did not believe that wearing a hoodie or the number of kids a person has are "infallible indicators" of a person being associated with a particular race. (*Id*. at 84-85). The court accepted the government's proffered race-neutral reasons as justifying and warranting the striking of the three jurors. (*Id*.).

Defense counsel made a record regarding Juror 15, reiterating similar concerns related to Jurors 27 and 11 about demeanor. (*Id*. at 85). Defense counsel also noted that, despite the government's statements, Juror 15 made no mention of playing video games or said anything to suggest he would avoid his responsibilities. (*Id*.). Notably, regarding the court's inquiry about recreational activities, selected jurors gave responses similar to Juror 15. (*Id*. at 23, 30, 34, 37, 40).[4]

Defense counsel noted that the court *did* give the government and defense counsel an opportunity to follow up with any of the prospective jurors, and the government made no additional inquiries into any of the five jurors or asked any follow up questions. (*Id*. at 86). The court still rejected defense counsel's race-based *Batson* challenge and later noted that there were eight women and three Black jurors on the selected jury. (*Id*. at 86-87).

---

[4] Juror 3 likes to watch her daughter "ride her horse for recreation, that's about it." Juror 16 likes to "fish, jog, stuff like that." Juror 20 likes to "go to the lake." Juror 10 likes to "run, play a little golf, fish, jog, do what old men do." Juror 24 likes to play "tennis and golf." Juror 26 likes to "go fishing, that's about it."

### 4.    Trial testimony

At trial, the government called Deputy Baker (by deposition) and Deputy Richardson to testify to the events that took place on August 23, 2018. The government also played audio and video recordings of the stop and interaction with Mr. Diamond captured by each deputy's dash cam video system. Deputy Baker testified that before he could explain why he pulled Mr. Diamond over, Mr. Diamond started explaining that he was headed to retrieve his wife's stolen vehicle. (Doc. 134 at 12). He recalled Mr. Diamond being upset about the situation with his wife's vehicle. (*Id*.). Deputy Baker admitted that though he intended to pull him over for speeding, he did not have a chance to tell Mr. Diamond why he was pulled over. (*Id*.). Deputy Baker called a TSA employee to verify whether Mr. Diamond was an employee in the air marshal database. (Doc. 188 at 143). The TSA employee could not find him in the database. (*Id*.). Deputy Baker admitted that he thought the badge looked like a toy and that Mr. Diamond's story was "shady." (*Id*. at 14).

Deputy Richardson testified that he asked Mr. Diamond to see the badge previously shown to Deputy Baker. (Doc. 188 at 96). He said Mr. Diamond frantically looked for the badge, found it, and presented it to him with shaking hands. (*Id*. at 97). He testified that Mr. Diamond told him it was an honorary badge that he used to get a discount when he goes to Home Depot. The dash camera recording captured Mr. Diamond telling Deputy Richardson that he worked in roofing and restoration and that the

12

air marshal status and badge was "an honorary thing." Mr. Diamond said he was an assistant to the air marshal, and when he is on the plane, he is not the actual air marshal that carries a gun. (*Id*. at 98-99). He stated that he had been an assistant to the air marshal for about a year. Deputy Richardson believed that Mr. Diamond knew they were "on to him" and was "trying to escape what he just told Deputy Baker trying to downplay it." (*Id*. at 99). Deputy Richardson also admitted that at no point did he believe Mr. Diamond was an air marshal or that the souvenir badge was a real air marshal badge. (*Id*. at 104). The dash camera recordings captured Deputy Baker telling Mr. Diamond he did this to try to get out of a ticket. Mr. Diamond responded that he was not trying to impersonate an officer, and that he was just trying to be on the same side as the deputies because he is a patriot and supports law enforcement.

Christy Diamond, Jay Diamond's ex-wife, testified for the government largely in line with the 404(b) testimony the court deemed admissible. She had never known Mr. Diamond to be an air marshal or law enforcement officer. (*Id*. at 118). She testified to finding a fake badge in Mr. Diamond's clothes while doing his laundry. (*Id*. at 119-20). When she confronted him about it, she says he found it at his grandmother's house and joked, saying "I wonder what kind of discounts we could get with this." (*Id*. at 120).

She recalled Mr. Diamond pretending to be a federal law enforcement officer during their anniversary trip to Knoxville, Tennessee to

13

get an upgraded room. (*Id*. at 113-15). She says that while attempting to get a room at a hotel, Mr. Diamond told the hotel employee that he was with the U.S. Marshal's Office and requested a government rate. (*Id*.). She admitted that while Mr. Diamond spoke with the hotel employee, she walked away from the counter, so she did not hear the conversation. (*Id*. at 115). She testified that he later told her they got their room comped for the night and upgraded to a suite. (*Id*.).

She also testified that Mr. Diamond pretended to be with the U.S. Marshal's Office on a family trip to Panama City Beach, Florida to obtain a spot at an RV Camper's Inn. (*Id*.). She testified that Mr. Diamond went inside of the Inn and spoke with the receptionist. (*Id*.). She claims that Mr. Diamond told her he got them a spot by telling them he was with the U.S. Marshal's Office. She testified that, according to Mr. Diamond, the receptionist told him there was someone else staying at the inn from the U.S. Marshal's Office and gave him their business card. (*Id*.). She admitted she did not go inside with Mr. Diamond when this conversation occurred. (*Id*.). She also testified that on about two occasions, Mr. Diamond pretended to be part of the military to receive a discount at a Home Depot in Alabama. (*Id*. at 119).

She could not recall the exact dates or years in which *any* of these instances occurred. (*Id*. at 128, 131-33). She admitted that she never saw Mr. Diamond use the badge. (*Id*. at 133-34). On cross examination, she admitted that in prior proceedings, when questioned about Mr. Diamond using the

14

badge to get discounts, she testified under oath she was "not aware of any of that." (*Id*. at 136-37).

Christy Diamond admitted that their ongoing divorce was contentious with significant disputes over property and custody of their child. (*Id*. at 111). She admitted that she started an intimate relationship with a former employee of her and Mr. Diamond's while still married to Mr. Diamond. (*Id*. at 125-26).

The government called Agents Edward Kleppinger and Jerry Coleman, who conducted the federal arrest of Mr. Diamond, to testify to the events that led up to his arrest on May 1, 2019. Agent Kleppinger testified that after the arrest, the transport to Atlanta Detention Center took about two hours and Mr. Diamond "spoke quite a bit." (Doc. 189 at 165-67). Agent Kleppinger recalled Mr. Diamond saying that he received the badge from his local law enforcement and that he is a patriot who supports the military and law enforcement. (*Id*. at 167). Agent Kleppinger testified that when they passed the traffic stop location on I-185, Mr. Diamond said "he should have just taken the ticket." (*Id*. at 168). Agent Coleman testified that Mr. Diamond told them that this was a misunderstanding and that the badge was more of an honorary badge he received from law enforcement officers. (*Id*.). None of the statements that Agents Kleppinger and Coleman testified to were recorded. (*Id*. at 193).

### 5.    Motion for judgment of acquittal

After the government rested their case, Mr. Diamond moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 based on the lack of sufficient evidence presented. (Doc. 149; Doc. 189 at 197). Mr. Diamond made this motion orally and presented a written motion to the court. Defense counsel noted that Mr. Diamond was charged under the first offense listed in 18 U.S.C. § 912, "pretending to be an officer or an employee acting under this authority of the United States and acting as such." (Doc. 189 at 198). There was not sufficient evidence presented to prove the second element, "acted as such." (*Id*.).

Defense counsel cited *United States v. Barnow*, 239 U.S. 74, 77-78 (1915), where the Supreme Court held that "acting as such" means something beyond the false pretense. (Doc. 189 at 198). Defense counsel argued that the "acting as such" element requires an overt act, something more than the lies and the puffery. (*Id*. at 200). Defense counsel agreed that the government met the first element— the pretending. (*Id*. at 199). But the government failed to present evidence of an overt act. (*Id*.).

The court inquired whether the representation to the officer can be both the pretending and the overt act. (*Id*.). But defense counsel reiterated the Supreme Court's finding that it must be more than the pretending. (*Id*.).

The government cited an Eleventh Circuit case, *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992), and argued that Mr. Diamond's identifying himself as a federal agent satisfied the second element. (Doc.

16

189 at 201-202). The government further argued that by Mr. Diamond's "spinning a story" to Deputy Richardson and showing the badge to both officers, the acting-as-such requirement was fulfilled. (*Id.* at 202). Defense counsel responded by pointing out that *Gayle* was about the sufficiency of the indictment, not the evidence. (*Id.* at 203). Defense counsel noted that in *Gayle*, the defendant actually pulled over individuals while purporting to be an FBI agent. (*Id.*).

The court inquired whether the flashing of a badge is an overt act. (*Id.*). Defense counsel argued that the flashing of the badge is still in the act of pretending. (*Id.*). The court denied the motion. (*Id.*). At the close of evidence, defense counsel renewed their motion for a judgment of acquittal and the court denied the motion a second time. (*Id.* at 219).

### 6.    Jury charges

After denying the Rule 29 motion, the court held a charge conference. (*Id.*). Defense counsel requested that a lesser-included offense jury instruction for 18 U.S.C. § 701 be included. (Doc. 148 at 18). Within the instruction, defense counsel proposed that the lesser offense requires "proof beyond a reasonable doubt that Mr. Diamond possessed a badge of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or possessed a colorable imitation of such badge." (*Id.*). Defense counsel argued that the lesser-included offense is a colorable offense that the jury could find Mr.

Diamond guilty of, should they find that the government has not met all the elements of 18 § U.S.C. 912. (Doc. 189 at 207).

The government objected to the inclusion of the instruction. (*Id*. at 206-07). The government cited *United States v. Kimberlin*, 781 F.2d 1247 (7th Cir. 1985), and argued that the two statutes — false impersonation of a federal officer and possessing the colorable imitation of a fake badge — have totally different elements and therefore one cannot be a lesser included offense of the other. (*Id*.). The court agreed with the government and did not include the jury instruction without further explanation. (*Id*.).

Mr. Diamond had filed a proposed jury instruction on "acted as such," requesting that the jury be instructed: "With respect to 'acting as such,' the government must prove that Mr. Diamond committed some overt act involving an assertion of claimed authority derived from the office he pretended to hold." (Doc. 148 at 17; Doc. 189 at 208-10). During the charge conference, the government objected that the proposal was contrary to Eleventh Circuit law. (Doc. 189 at 210). Defense counsel responded that the requested instruction did not contradict the Eleventh Circuit pattern instruction but was supplemental. (*Id*. at 210-11).

The court heard argument from both parties on the issue. Defense counsel presented an alternative overt act instruction, noting that Mr. Diamond preferred the original requested instruction. (*Id*. at 214-15). The alternative instruction was: "With respect to 'acting as such,' the government must prove that Mr. Diamond acted in a manner consistent

18

with his pretended authority as an officer or employee of the United States." The government did not object to the alternative, and the court included it in the jury instructions.

Defense counsel preserved an objection to the denial of the proposed lesser-included offense jury instruction, and to the denial of Mr. Diamond's preferred overt act charge. (*Id*. at 217).

### 7.    **The verdict**

The jury found Mr. Diamond guilty on both counts of the indictment. (Doc. 153). He was sentenced to time served, with one year of supervised release. (Doc. 173). He has completed his sentence and term of supervised release. He now appeals the conviction.

## C.    **Standard of Review**

This Court reviews a district court's denial of judgment of acquittal on sufficiency-of-the-evidence grounds *de novo*, viewing the evidence in the light most favorable to the government. *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016).

Where a party alleges a *Batson* violation, this Court reviews jury selection *de novo*, but it reviews the district court's underlying factual findings, including the court's determinations regarding the motivations behind challenged strikes, for clear error. *United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008).

The failure to give a theory-of-the-defense jury instruction is reviewed for an abuse of discretion. *United States v. Martinelli*, 454 F.3d

19

1300, 1315 (11th Cir. 2006). This Court reviews the district court's refusal to instruct the jury on a lesser-included offense for abuse of discretion. *United States v. Lee*, 68 F.3d 1267, 1273 (11th Cir. 1995). "An abuse of discretion may occur where the evidence would permit a rational jury to find the defendant guilty of the lesser offense and not the greater." *United States v. Cornillie*, 92 F.3d 1108, 1109 (11th Cir. 1996).

This Court reviews the district court's decision to admit Rule 404(b) evidence for abuse of discretion. *United States v. Lampley*, 68 F.3d 1296, 1299 (11th Cir. 1995)*.*

## SUMMARY OF THE ARGUMENT

The district court erred in denying Mr. Diamond's Rule 29 motion for a judgment of acquittal. The government failed to present evidence that Mr. Diamond had not only pretended to be a federal officer, but that he "acted as such," which was a necessary element of the charged offense. Accordingly, Mr. Diamond's motion should have been granted at the close of the government's case in chief. Even if, *arguendo*, the court's denial of the motion was not error, there was insufficient evidence to support a conviction on either count.

The district court erred in denying Mr. Diamond's *Batson* challenge in regards to the government's use of preemptory strikes against three Black jury venire members. Mr. Diamond made a *prima facie* case to support the challenge, and the government's proffered reasons for its strikes were not race-neutral but, instead, were based on negative racial stereotypes.

The district court abused its discretion in denying Mr. Diamond's requested jury instruction on the term "acted as such," because the requested instruction was an accurate statement of law not adequately covered by any other instruction. Further, the court abused its discretion in denying Mr. Diamond's request for a jury instruction on a lesser-included offense, because the jury could have convicted on the lesser-included offense but not the charged offense.

The district court abused its discretion by allowing the government to present Rule 404(b) evidence, over Mr. Diamond's objection. The 404(b)

evidence was not relevant for any permissible purpose but, instead, was purely propensity evidence, which the rule forbids. Moreover, the evidence was unfairly prejudicial to Mr. Diamond.

## ARGUMENT AND CITATION OF AUTHORITY

### I.  The District Court Erred in Denying Mr. Diamond's Rule 29 Motion for a Judgment of Acquittal Because the Evidence was Insufficient

At the close of the government's case in chief, Mr. Diamond moved pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal, on the basis that the government had not presented evidence that he had pretended to be a federal officer and "acted as such," both of which were necessary elements to an 18 U.S.C. § 912 offense. (Doc. 189 at 197-201). Counsel also prepared and provided to the trial court a written motion. (*See* Doc. 149). Without reviewing the written motion, the court denied the motion. (Doc. 189 at 202-03). After the defense rested, Mr. Diamond renewed the motion, which the court again denied. (*Id*. at 219). This was error.

The due process guaranteed by the Fifth Amendment requires "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (applying the constitutional right to due process via the Fourteenth Amendment in a habeas challenge to a state conviction). "When a man's liberty is at stake, [the court] must be vigilant with this burden." *United States v. Louis*, 861 F.3d 1330, 1331-32 (11th Cir. 2017).

In a criminal prosecution, after the government has presented its entire case in chief, the court must enter a judgment of acquittal for any offense for which the evidence is insufficient to sustain a conviction. FED. R. CRIM. P. 29. Evidence is sufficient to support a conviction only if a reasonable jury could find that the evidence in the record established guilt beyond a reasonable doubt as to every element. *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009). "A conviction must be reversed, however, if a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt." *United States v. Thomas*, 916 F.2d 647, 653 (11th Cir. 1990). If the government fails to present evidence on a necessary element, there is insufficient evidence to support a guilty verdict. *See id*. at 654.

Here, the charged offenses required the government to present evidence that would satisfy three elements, and yet the government only presented evidence going to two of the necessary elements. Because the government failed to present evidence on a necessary element, no reasonable jury could find that the evidence met the government's burden of proof, and the trial court erred in denying Mr. Diamond's Rule 29 motion. Further, even if the court's ruling was not error, there was not sufficient evidence to convict Mr. Diamond on either count.

### A.    The charged offenses require proof of three elements.

Under 18 U.S.C. § 912, a person commits a felony when he pretends to be a federal agent and then carries out certain acts:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any

24

department, agency or officer thereof, *and acts as such,* or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 912 (emphasis added).

The statute thus sets forth two ways a person can violate § 912: by pretending to be a federal officer and acting as such, or by pretending to be a federal officer and, in such pretended character, requesting or obtaining a thing of value. *Id.; see Baas v. United States*, 25 F.2d 294, 294 (5th Cir. 1928) ("The statute creates two offenses. Briefly stated, they are: First, with intent to defraud, falsely pretending to be an officer or employee of the United States, and taking it upon himself to act as such; second, with the same intent and pretense, demanding or obtaining something of value.").[5]

There can be no dispute that Mr. Diamond was charged with two counts of violating the first clause of the statute. The government did not charge with him demanding or obtaining a thing of value in the indictment, nor did it make such allegations at trial. Instead, the indictment clearly alleges two "acting as such" offenses: each count charged that Mr. Diamond, on or about August 23, 2018, "did knowingly and willfully, falsely assume and pretend to be an officer and employee of the United States *and did act as such.*"  (Doc. 37 (emphasis added)). The two counts

---

[5] Fifth Circuit cases decided prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

were distinguished only by the alleged intent: Count One charged that he did so to avoid a speeding citation, and Count Two charged that he falsely pretended to be an officer in order to avoid arrest for falsely pretending to be an officer. (*Id*.).

In order to prove a violation of § 912, the government must present evidence that proves beyond a reasonable doubt three elements: (1) the defendant pretended to be an officer or employee of the United States; (2) he either acted as such, or demanded or obtained something of value; and (3) he did so knowingly with intent to defraud. *See* Eleventh Cir. Pattern Jury Instruction, Offense Instruction 33. "It is clear from the statute that 'acting' is a conjunctive element of the offense and *must* be joined with the false assumption of identity in order to allege a violation." *United States v. Harmon*, 496 F.2d 20, 20 (2d Cir. 1974) (emphasis added) (addressing the sufficiency of the indictment). "[T]he statute clearly requires an act and the pretense" such that the impersonation itself is not sufficient to satisfy the statute. *United States v. Rosser*, 528 F.2d 652, 657 (D.C. Cir. 1976).

"Merely falsely pretending to be an officer or employee of the United States with intent to defraud is not enough. An overt act is necessary to complete either offense." *Baas v. United States*, 25 F.2d 294, 294 (5th Cir. 1928) (emphasis added). And, moreover, "the act that completes a violation of Section 912(1) must be something more than merely an act in keeping with the falsely assumed character." *Rosser*, 528 F.2d at 657.

26

Thus, the government must show an overt act beyond the impersonation itself, as a necessary element of the offense. Otherwise, § 912 might run afoul of the First Amendment. *See generally United States v. Alvarez*, 567 U.S. 709, 725 (2012) (holding that the Stolen Valor Act, which criminalized false statements of being awarded a military medal, was an unconstitutional infringement on speech). That is why the statute "focus[ed] on acts of impersonation, not mere speech." *Id.* at 735 (Breyer, J., concurring) (distinguishing § 912 from the unconstitutional Stolen Valor Act). The requirement of an overt act avoids the criminalization of "mere boastful speech." *United States v. Wade*, 962 F.3d 1004, 1010 (7th Cir. 2020). Without "the requirement of an intentional action in the pretended character," § 912 would "unconstitutionally abridge[e] protected speech." *Id.* (internal quotes, citation omitted).

### B.    The government failed to present evidence that Mr. Diamond "acted as such."

At trial, the government did not present evidence going to the second element of a § 912 acted-as-such offense. Instead, it presented evidence only of the false representation—that Mr. Diamond claimed to be an air marshal—which was insufficient to satisfy the acted-as-such element, and of the alleged intent. Because the government failed to present evidence on a necessary element, the court erred in denying Mr. Diamond's Rule 29 motion.

The Supreme Court has discussed the overt act the government must prove to carry its burden as to the acting-as-such element.

27

[T]o 'take upon himself to act as such' means . . . to act in the pretended character. *It requires something beyond the false pretense* with intent to defraud; *there must be some act in keeping with the pretense . . . .*

[]

[T]he statute is to be interpreted according to its plain language as prohibiting any false assumption or pretense of office or employment under the authority of the United States, or any department or officer of the government, if done with an intent to defraud, *and accompanied with any of the specified acts done in the pretended character . . . .*

*United States v. Barnow*, 239 U.S. 74, 77-78 (1915) (emphasis added). *See also Lamar v. United States*, 241 U.S. 103, 114 (1916) (explaining that the statute "prohibit[s] and punish[es] the falsely assuming or pretending . . . and the doing in the falsely assumed character any overt act . . . to carry out the fraudulent intent").

Courts have consistently held that "the pretense itself" cannot serve as the required act. *See, e.g.*, *United States v. Harmon*, 496 F.2d 20, 20 & n.3 (2d Cir. 1974). To allow otherwise would render the "act as such" language in the statute "mere surplusage," and "[p]enal statutes, in particular, will not permit such a strained construction." *Id.* at 21. Instead, the act "must be something more than merely an act in keeping with the falsely assumed character." *Rosser*, 528 F.2d at 657. "[I]t must be something more than mere repetition of the pretense, such as solicitation, inquiry, demand for information, or the like." *United States v. Larson*, 125 F. Supp. 360, 361 (D. Alaska 1954).

28

Courts have found a variety of conduct can be tantamount to an overt act. Examples of affirmed convictions include the following false impersonations <u>and</u> overt acts:

- Pretending to be an FBI agent <u>and</u> questioning an individual about the location of another person. *United States v. Lepowitch*, 318 U.S. 702, 703 (1943).

- Pretending to be a State Department employee <u>and</u> negotiating for the purchase of an apartment, including requesting security improvements to the building.[6] *United States v. Bakhtiari*, 913 F.2d 1053, 1059 (2d Cir. 1990).

- Pretending to be an IRS agent <u>and</u> asserting authority over a seller of firewood by claiming, in two conversations, to be investigating the seller for not paying taxes on the firewood sales. *United States v. Parker*, 699 F.2d 177, 179 (4th Cir. 1983).

- Pretending to be a federal police officer <u>and</u> attempting to conduct a traffic stop by positioning his vehicle behind another vehicle, activating a siren and blue police lights, and using a loudspeaker to instruct the driver to pull over. *United States v. Roe*, 606 F.3d 180, 187-89 (4th Cir. 2010).

---

[6] Notably, Mr. Bakhtiari also identified himself as a State Department employee to investigating federal agents, but was not charged under § 912 with that impersonation. *Bakhtiari*, 913 F.2d at 1055. He was, however, charged with making false statements pursuant to 18 U.S.C. § 1001.

- Pretending to be an FBI agent <u>and</u> ordering a victim to get into a vehicle and submit to being transported for questioning. *United States v. Emerson*, 47 F.3d 1171 (6th Cir. 1995).

- Pretending to be an FBI agent <u>and</u> entering another's home wearing a gun in a holster. *United States v. Hamilton*, 276 F.2d 96, 98 (7th Cir. 1960).

- Pretending to be a DEA agent <u>and</u> questioning an individual at her home and then seeking a date with her. *United States v. Wade*, 962 F.3d 1004 (7th Cir. 2004).

- Pretending to be a congressional aid <u>and</u> preparing a letter from the congressperson's office and sending it to a constituent. *United States v. Tomsha-Miguel*, 766 F.3d 1041, 1046 (9th Cir. 2014).

- Pretending to be FBI agents <u>and</u> forcing a car to pull over, questioning its occupants, and threatening to take them in for questioning. *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992).

Although a variety of overt acts have been found to satisfy the acted-as-such element, there must <u>be</u> an overt act—"[t]he statute does not punish mere puffing." *United States v. Rippee*, 961 F.2d 677, 679 (7th Cir. 1992). It requires "more than mere lies." *United States v. Bonin*, 932 F.3d 523, 536 (7th Cir. 2019). Yet in Mr. Diamond's case, the government's evidence was merely that Mr. Diamond engaged in lies or puffery, not that he lied about his status <u>and</u> took some action acting as a federal officer.

The government's evidence at trial was limited to evidence that Mr. Diamond falsely represented himself to be a federal agent by stating that he was an air marshal or senior air marshal and showing a fake badge. At no point while representing himself as an air marshal did he give any instructions to Deputy Baker or Deputy Richardson, request them to take any action, or request to be treated in any way. Thus, the evidence may have shown that he falsely identified himself as a federal officer, but there was no evidence of action taken by Mr. Diamond where he assumed the authority of a federal officer. Instead, throughout the traffic stop, Mr. Diamond "acted as" a common citizen during a traffic stop: answering the officers' questions, albeit untruthfully; providing his license; explaining where and why he was driving; and complying with their instructions.

Mr. Diamond does not dispute that the government presented evidence that went toward the first element of Count One and Count Two. The record shows that the government introduced evidence to support its allegation that Mr. Diamond pretended to be an officer and employee of the United States. Mr. Diamond also does not dispute that the government presented evidence that went toward the third element of both counts. Namely, it introduced evidence relevant to Mr. Diamond's motivations to lie to avoid consequences. There was evidence that the jury could consider on both of those elements. However, the government did not present any evidence that Mr. Diamond "acted as" a federal officer or employee, other than the impersonation itself. With no evidence to satisfy the second

31

element, the government's case in chief was not sufficient for the government to carry its burden, and Mr. Diamond's Rule 29 motion should have been granted.

To the extent that the government relied upon *Gayle* to support its position that the impersonation itself could satisfy the first and second element, this is incorrect. In *Gayle*, this Court considered the sufficiency of the indictment in a § 912 prosecution, and concluded that, *inter alia*, an indictment is sufficient when it included the statutory "acted as such" language but did not allege specific overt acts. *Gayle*, 967 F.2d at 487-88.

Critically, *Gayle* is not a sufficiency of the evidence case, and the Court did not consider whether a § 912 conviction could stand based only on evidence of impersonation and nothing more. Such circumstances—impersonation alone—were not before the Court in *Gayle*, because there was no question that the defendants in *Gayle* not only impersonated federal officers, but committed overt acts using that pretend authority. The defendants in *Gayle* conducted a vehicle stop by closely following and then hitting a car with two occupants. *Gayle*, 967 F.2d at 484-85. The defendants falsely identified themselves as FBI agents and their vehicle had a fake "FBI" front license plate—evidence that would satisfy the first element. However, the defendants also acted as law enforcement officers and wielded authority over the victims—evidence that would satisfy the second element. Specifically, they conducted the traffic stop; pretended to be investigating an accident; informed the vehicle's occupants that their car

was suspected of being involved in an accident; wrote down the vehicle's license plate; threatened to take the occupants "downtown"; and detained the occupants at the scene of the stop for an extended time. *Id.* at 485. Thus, the Court in *Gayle* could not have held that the government is relieved of its burden to produce evidence that a defendant "acted as such" other than the impersonation itself to sustain a conviction, as that question was not before the Court in that case.

Although *Gayle* supports the proposition that a § 912 indictment is sufficient even if it does not allege a specific overt act, Mr. Diamond does not challenge the sufficiency of the indictment. Instead, he challenges the sufficiency of the evidence, and *Gayle* does not establish that the first and second elements necessary to prove a § 912 offense are redundant.

To the extent that the government at trial argued that Mr. Diamond's conduct in showing the badge was evidence going to the acted-as-such element, this was another attempt to conflate the first and second elements of the offense. Showing the deputies the badge was part and parcel of the false representation, and that evidence went to the first element, only. It is noteworthy that each time that Mr. Diamond showed the deputies the badge, he was complying with their requests that he do so—rather than exercising (pretend) authority, he was conceding to the officers' requests.

It is also noteworthy that the government did not identify a case, from this circuit or elsewhere, of a § 912 acted-as-such conviction where the only proffered overt act was the display of credentials. On the other hand,

33

many cases involve a display of credentials as part of the false personation, paired with an overt act as the impersonated officer. *See, e.g., Roe*, 606 F.3d at 182-83 (defendant verbally identified himself as a federal police officer and showed a fake badge <u>and</u> attempted to conduct a vehicle stop); *Emerson*, 47 F.3d 1171 (defendant verbally identified himself as an FBI agent and showed a fake identification <u>and</u> ordered the victim to enter a vehicle to be brought in for questioning); *Wade*, 962 F.3d at 1007-08 (defendant verbally identified himself as a DEA agent, wore a badge, and left a business card <u>and</u> interviewed the victim and pursued a romantic relationship with her).

The possession of a fake badge and showing it to the officers on request did not constitute an exercise of pretend authority to satisfy the acted-as-such element. Instead, this evidence went to the impersonation element. The trial court's ruling otherwise and denial of Mr. Diamond's Rule 29 motion was, therefore, error, and Mr. Diamond's convictions should be reversed.

### C.    Even if the court did not err in denying the motion, there was insufficient evidence to support a conviction.

Even if this Court concludes that the trial judge did not err in allowing the case to proceed to the jury, there nonetheless is insufficient evidence to support a conviction on either count. Even viewing the evidence in the light most favorable to the prosecution, without an overt act that satisfied the acted-as-such element, there was insufficient evidence of Mr. Diamond's guilt on either count.

34

At trial, no witness identified any action taken by Mr. Diamond "acting as" an air marshal. He did not give either deputy any instructions, make any demands of them, or wield any assumed authority of an air marshal. Other than his statements about being an air marshal and showing the false badge, he otherwise acted as a "civilian" who had been stopped by law enforcement. There was simply nothing more to Mr. Diamond's conduct than the false personation, which is not sufficient to support a conviction.

In closing argument, the government contended that the impersonation conduct alone—Mr. Diamond's statements about being an air marshal and possession of a badge—was an overt act. (Doc. 201 at 4-5, 9-10). The government's arguments conflating the first and second elements of the statute were incorrect, and an attempt to avoid its burden of proving each element.

The government has the burden of "proving beyond a reasonable doubt *every fact* necessary to constitute the crime with which the defendant is charged," and this Court must hold the government accountable to this burden. *Louis*, 861 F.3d at 1335 (quotation omitted). Even if the government were to prove that it is more likely than not that the defendant committed the acts in question, that is insufficient to meet its burden, warranting reversal. *See id.* In the instant case, for the reasons described above, the government has failed to present evidence that would meet its burden

regarding the second element of the offense. This Court should reverse the convictions.

## II.    The District Court Erred in Denying Mr. Diamond's *Batson* Challenge

It is well established that a prosecutor's use of a peremptory challenge to remove even *one* Black juror from a jury due to racial considerations is unconstitutional, in violation of the Sixth Amendment's Equal Protection Clause. *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712 (1986). Eliminating— not just simply minimizing—racial discrimination in jury selection is the essence of *Batson. United States v. David,* 803 F.2d 1567, 1571 (11th Cir. 1986).

In *Batson*, the Supreme Court articulated a three-part test to evaluate whether a prosecutor used peremptory strikes in violation of the Equal Protection Clause: (1) the moving party must make a *prima facie* showing that a peremptory challenge was exercised on the basis of race; (2) the non-moving party must offer a race- or gender-neutral basis for striking the juror in question; and (3) the trial court must determine whether the moving party has shown purposeful discrimination. *United States v. Walker,* 490 F.3d 1282, 1291 (11th Cir. 2007).

Here, defense counsel made a *prima facie* showing that the government used five of their six peremptory strikes on prospective jurors on the basis of race and/or gender. Four of the five jurors struck by the government were women, and three of the five jurors were Black. It is undisputed that the first prong is met. The court then required the

36

government to proffer its reasons for striking the five jurors first based on gender, then based on race. After the government gave what it purported to be race- and gender-neutral reasons for striking the five prospective jurors, the court overruled defense counsel's *Batson* objections. However, the government's proffered reasons for striking the Black jurors were pretextual, and thus the court erred in denying the *Batson* challenge.

A prosecutor's proffered reasons for exercising a peremptory strike must be clear and legitimate. A prosecutor's vague explanations, denials of a discriminatory motive, and affirmations of good faith are insufficient. *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1255 (11th Cir. 2013). Proffered race-neutral explanations regarding a juror's demeanor, such as inattentiveness during *voir dire* or rolling and rubbing her eyes may be satisfactory, race-neutral reasons for exercising a peremptory strike. *United States v. Diaz*, 26 F.3d 1533 (11th Cir. 1994). However, these explanations are difficult to review on appeal, and courts must "fully develop the record regarding the specific behavior by a venire-person that leads to a peremptory strike and should verify that the stricken venire-person's conduct was conspicuously different from that of the other venire-persons." *Id*. at 1542-43.; *Snyder v. Louisiana,* 552 U.S. 472 (2008). Courts

should reject demeanor-based explanations that cannot be confirmed by the record.[7]

When examining the record, courts should look to a prosecutor's failure to engage in any meaningful voir dire examination on a subject of concern as evidence suggesting the explanation is a sham and pretext for discrimination. *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005). The failure of a prosecutor to ask "a follow-up question indicates that his later alleged concern" may be pretextual. *Ali v. Hickman*, 584 F.3d 1174 (9th Cir. 2009). If the prosecutor "mischaracterized" a juror's testimony, that can provide evidence of pretext. *Miller-El*, 545 U.S. at 244. Additionally, where a prosecutor's explanation for a strike "applies with equal force to otherwise similar jurors who were not stricken, it tends to prove that the prosecutor's stated reason was pretextual." *Id*. at 241.

Here, the record establishes that the prosecutor's reasons for striking prospective Jurors 11, 15, and 27, each of whom are Black, were race-based. The prosecutor's primary proffered reason for striking all three jurors was their demeanor.

As to Juror 11, the prosecutor vaguely mentioned her demeanor and work as a daycare worker as reasons for the strike. Yet he provided no details about her demeanor and did not recall that she was actually retired.

---

[7] *See* Michael J. Raphael & Edward J. Ungvarsky, *Excuses, Excuses: Neutral Explanations Under* Batson v. Kentucky, 27 U. MICH. J.L. REF. 229, 246–50, 266–67 (1993).

(Doc. 188 at 36). Juror 11 made no mention of being a daycare worker, nor does the record show anything unusual about her demeanor as compared with other members of the venire. (*Id*.). Even if Juror 11 was a daycare worker, the government had no issue with selected Juror 2, a former teacher with a master's degree in education.

As to Juror 15, the prosecutor found his unemployment at the time problematic. However, he was not unemployed and instead reported having worked at a business through a staffing service for six or seven months. (*Id*. at 22). The prosecutor explained that Juror 15 appeared to be "the type of guy" who "would rather" hang out with his buddies and play video games than serve as a juror. (*Id*. at 81). Yet Juror 15 mentioned nothing about videos games, nor did he raise any issue why he could not serve as a juror or request to be relieved from jury duty. Notably, the trial court provided the venire with a list of written questions they each responded to, which included a question asking what they did for recreation. Responses included playing golf, fishing, jogging, going to the lake, and watching their child ride a horse. Thus, every prospective juror stated something they did for entertainment.

Juror 15 responded to this question: "[F]or recreation I like to hang out with my friends and work out and things like that." (*Id*. at 22). The government's assumption that he was "the type of guy" who preferred playing video games than participating as a juror belies a race-based stereotype about Black men as lazy, particularly when paired with the

prosecutor's misstatement that Juror 15 was unemployed. The prosecutor's substitution of a passive, "lazy" habit (video games) rather than the active recreation Juror 15 actually discussed and the prosecutor's belief that he wanted to avoid jury duty rather than willingly serve show that the prosecutor was relying on negative race-based stereotypes[8] rather than what Juror 15 said or did during voir dire. As such, the proffered reasons for striking Juror 15 were mere pretext.

The prosecutor provided further race-based reasons for striking Juror 27. The prosecutor stated that Juror 27 had five children—referring to "all of those kids"—and immediately stated that she was unmarried before correcting himself that she is in fact married. (*Id*. at 82). This mischaracterization is rooted in a negative stereotype of unmarried Black women with children.[9] The prosecutor further explained that Juror 27 seemed like she preferred to be elsewhere and her choice of wearing a hooded sweatshirt showed that she would not take her responsibilities seriously. The prosecutor's disparaging attitude towards a juror wearing a hooded sweatshirt and perception of Black jurors in sweatshirts as

---

[8] *See* Justice Michael B. Hyman, *Implicit Bias in the Courts*, 102 ILL. B.J. 40, 41 (2014); Robin K. Magee, *The Myth of the Good Cop and the Inadequacy of Fourth Amendment Remedies for Black Men: Contrasting Presumptions of Innocence and Guilt*, 23 CAP. U. L. REV. 151, 209–10 (1994).

[9] *See* Michele Goodwin, Erwin Chemerinsky, *Pregnancy, Poverty, and the State the Poverty of Privacy Rights by Khiara M. Bridges, Stanford University Press, 2017*, 127 YALE L.J. 1270, 1298-1304 (2018).

disinterested or unmotivated to participate is rooted in yet another negative stereotype associated with Black people wearing hoodies. His statements belied a belief that this Black juror was lazy and unmotivated to participate—despite the record showing she was a working mother of five, far from lazy. The fact that the prosecutor cited his own race as a Latino man and proclaimed to also wear hoodies does not negate his racially motivated strike of Juror 27. Notably, regardless of their sweatshirts the record does not show that Jurors 15 and 27 were inattentive, uncooperative, or disinterested in the proceedings; rather, they respectfully and promptly responded to questioning by counsel and the court.

The Supreme Court has long held that when determining whether a prosecutor's race-neutral reasons for striking jurors are credible, courts must look to the prosecutor's demeanor, how reasonable or improbable the reasons are, and whether the proffered rationale has some basis in accepted trial strategy. *Miller-El v. Crockrell*, 537 U.S. 322, 339 (2003). Here, the court failed to adequately analyze whether the government gave race- and gender-neutral reasons for the strikes. The court made no meaningful inquiries into the prosecutor's proffered reasons. When defense counsel brought to the court's attention the race-based stereotypes implicit in the government's purported reasoning, the court did not believe the stereotypes existed and was ultimately satisfied with the government's explanations.

41

The court highlighted that the selected jury consists of three Black people and eight women. However, this fact does not negate the Equal Protection Clause violation that occurred when the prospective jurors were struck. Other courts of appeals have explained why this is the case: "The final composition of the jury . . . offers no reliable indication of whether the prosecutor intentionally discriminated in excluding a member" of the venire. *Holloway v. Horn,* 355 F.3d 707, 728-29 (3d Cir. 2004). "[A] Batson inquiry focuses on whether or not racial discrimination exists in the striking of a Black person from the jury, not on the fact that other Blacks may remain on the jury panel." *United States v. Johnson,* 873 F.2d 1137, 1139 n.1 (8th Cir. 1989).

The court erred in denying Mr. Diamond's *Batson* challenge, and, additionally, did not create a sufficient record for this Court to conclude otherwise. For this reason, the convictions should be reversed and the case remanded.

## III.   The District Court Abused Its Discretion by Failing to Give Mr. Diamond's Requested Jury Instructions

### A.   Mr. Diamond's requested "acted as such" instruction.

Mr. Diamond requested that the jury be instructed: "With respect to 'acting as such,' the government must prove that Mr. Diamond committed some overt act involving an assertion of claimed authority derived from the office he pretended to hold." (Doc. 148 at 17). This request was key to Mr. Diamond's defense theory, which was clear to the court and the

government by the time of the charge conference. The requested instruction was legally correct and should have been given.

The court denied this request, instead instructing the jury: "With respect to acting as such, the government must prove that Mr. Diamond acted in a manner consistent with his pretended authority as an officer or employee of the United States." (Doc. 194 at 8).

"The district court's refusal to deliver a jury instruction requested by the defendant constitutes reversible error if the instruction '(1) is correct, (2) is not substantially covered by other instructions which were delivered by the court, and (3) deals with some point in the trial so 'vital' that the failure to give the instruction seriously impaired the defendant's ability to defend.'" *United States v. Opdahl*, 930 F.2d 1530, 1533 (11th Cir. 1991) (quoting *United States v. Lively*, 803 F.2d 1124, 1125-1126 (11th Cir. 1986)). "Because a defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, the failure to give an instruction when the defendant has met his burden is reversible error." *United States v. Mayweather*, 991 F.3d 1163, 1176 (11th Cir. 2021) (internal citation omitted).

The district court was wrong to reject the requested charge, and offered no reasoning to justify its ruling. The government's first argument against the requested instruction was that it was not a correct statement of law; however, the court appeared to reject that argument. (Doc. 189 at 210-11). As shown above, it was, in fact, a correct statement of law.

The government's next argument was that, if the requested instruction was given, the court would have to instruct the jury on "overt act." During argument on that question, defense counsel offered amended language that did not include the term "overt act," and the court quickly adopted that language, which the government did not object to. (*Id*. at 213-15). Although defense counsel proffered the language of the instruction ultimately given by the court, counsel maintained its request for the request submitted in writing, and preserved an objection to the denial of the requested instruction. (*Id*. at 217).

First the language in the requested jury instruction is a correct statement of the law, which the court appeared to accept. The proposed instruction was not contrary to the pattern jury instruction for a § 912 offense, but instead addressed an ambiguity of the pattern instruction. *See* Eleventh Cir. Pattern Jury Instruction, Offense Instruction 33.

Second, the requested charge was not covered by other parts of the jury instructions. As noted, the requested instruction gave additional information and context, not otherwise included in the pattern instruction or any other instruction given by the court. The instruction given by the court did not cover the entirety of the requested instruction because it did not encompass or clarify that the government was obliged to prove that Mr. Diamond "committed an overt act involving an assertion of claimed authority" derived from the impersonation. Instead, the instruction given to the jury merely stated that the government must prove Mr. Diamond

44

"acted in a manner consistent with his pretended authority"—this instruction did not add to or clarify the pattern instruction, including that it did not clarify that the government needed to present evidence of an overt act. Because the instruction given by the court could have been satisfied by the false identification alone, it failed to cover the topic addressed by the requested instruction, namely, the overt act requirement.

Third, the subject matter of the requested instruction was key to Mr. Diamond's defense. The defense theme for the case was that Mr. Diamond had not "acted as such." This was clear from opening statements, when defense counsel noted that "what Mr. Diamond doesn't say and what he doesn't do will prove to be just as crucial as the things that he says." (Doc. 200 at 8). Defense counsel stated, in opening, that Mr. Diamond was not charged with possessing a fake badge or falsely stating that he was a federal agent, but with a statute that required proof of three elements, and that the government would not be able to satisfy all three. (*Id.* at 10-12). Throughout the trial, counsel elicited testimony establishing the parameters of Mr. Diamond's conduct, to support the lack of evidence of an overt act, and filed a lengthy written Rule 29 motion raising this issue. Clearly, the requested instructions dealt "with some point in the trial so 'vital' that the failure to give the instruction seriously impaired the defendant's ability to defend. *Opdahl*, 930 F.3d at 1533.

The district court did not offer a reason for rejecting the requested charge. Nonetheless, Mr. Diamond's requested charge presented an

45

accurate statement of law, and his defense theory was supported by the evidence. The requested instruction was relevant to the heart of the defense, and was not sufficiently covered by another charge of the court. As such, the district court erred in denying the requested instruction.

### B.    Mr. Diamond's requested lesser-included instruction.

A lesser-included offense jury instruction is warranted where the evidence would have permitted a rational jury to find a defendant guilty of the lesser offense but acquit them of the greater offense. *United States v. Gumbs*, 964 F.3d 1340, 1348-49 (11th Cir. 2020). There must be "a disputed issue of fact" concerning an element required for the greater offense but not the lesser offense. *United States v. Gutierrez*, 745 F.3d 463, 470 (11th Cir. 2014). A district court abuses its discretion in denying a lesser-included instruction if a two-part test is satisfied: (1) the charged offense encompasses all of the elements of the lesser offense; and (2) "the evidence would permit the jury rationally to acquit the defendant of the greater, charged offense and convict him of the lesser." *United States v. Williams*, 197 F.3d 1091, 1095 (11th Cir. 1999); *see also* Fed. R. Crim. P. 31(c)(1).

Defense counsel proposed to charge the lesser-included offense 18 U.S.C. § 701, which provides that:

> Whoever manufactures, sells, or possesses any badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof, or photographs, prints, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such badge, identification card, or other insignia,

46

or any colorable imitation thereof, except as authorized under
regulations made pursuant to law, shall be fined under this title
or imprisoned not more than six months, or both.

To be convicted of this offense, a jury must find that the defendant
knowingly possessed an imitation badge, identification card, or other
insignia.

To be convicted of impersonating an officer, a jury must find that:
(1) the defendant pretended to be an officer or employee acting under the
authority of the United States; (2) the defendant "acted as such" and (3) the
defendant did so knowingly with intent to deceive or defraud another. In
this case, the element of possession of the imitation badge is encompassed
within the first element of pretending to be a federal officer or employee.

The charged offense encompasses the elements of the proposed
lesser-included offense, because it is a necessary element of a § 912 offense
that the defendant falsely pretended to be a federal employee or officer,
which encompasses possession of false identification documents. A
reasonable jury could have found Mr. Diamond guilty of possessing an
imitation badge and acquitted him of falsely impersonating a federal
officer. Evidence presented at trial supported a conviction for possessing
an imitation badge. Deputy Baker and Richardson testified that Mr.
Diamond presented the imitation badge to them. Deputy Baker testified
that the words "United States Federal Air Marshal" were written on the
badge. Neither deputy testified that the badge contained words such as
"fake" or "honorary" or "souvenir."

47

Furthermore, the evidence did not show that there was an overt act taken using the pretend federal authority, nor that Mr. Diamond was attempting to get out of a ticket when he was initially stopped. These were facts in dispute. The absence of evidence of an overt act is discussed at length above. Turning to Mr. Diamond's intent, the evidence showed Deputy Baker did not inform him that he intended to ticket him for speeding before Mr. Diamond claimed to be an air marshal and presented the badge. Although Mr. Diamond's later statement "I should have just taken the ticket," is indicative of him knowing he was being pulled over for speeding, that statement was made nearly a year later, after Mr. Diamond was aware of his charges and what he was being accused of.

A reasonable jury could have found that there was no evidence of an overt act or intent to deceive or defraud another. Accordingly, the lesser-included offense was warranted, and the court should have instructed the jury to consider it. The court's denial of the request was an abuse of its discretion.

Because the district court improperly denied Mr. Diamond's requested jury instructions, the convictions must be vacated and the case remanded for further proceedings.

## IV.  The District Court Abused Its Discretion When Denying Mr. Diamond's Motion to Suppress Evidence of Prior Alleged Acts

The Federal Rule of Evidence Rule 404(b) governs the admissibility of prior bad act evidence. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

48

conformity therewith." FED. R. EVID. 404(b). This Court has routinely held that "[e]vidence of extrinsic offenses is inadmissible to prove that the accused has the propensity to commit the crime charged." *United States v. Veltmann*, 6 F.3d 1483, 1498 (11th Cir. 1993).

The Eleventh Circuit applies a three-part test to evaluate the admissibility of evidence under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) "there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act"; and (3) "the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

Over Mr. Diamond's objection, the court allowed the government to introduce evidence through Christy Diamond of three prior bad acts where Mr. Diamond allegedly received benefits by falsely impersonating a U.S. Marshal or member of the military: (1) an anniversary trip in Knoxville, Tennessee, (2) a family vacation at an RV park in Panama City Beach, Florida, and (3) Home Depot. The court also allowed the government to introduce a fourth piece of 404(b) evidence that Christy Diamond found the badge while doing laundry, confronted Mr. Diamond about it, and he joked about using it for discounts. The court did not make sufficient findings regarding what permissible non-propensity purpose the evidence served or how the evidence satisfied the three-prong test for admissibility.

49

Because the prior alleged acts did not satisfy any of the prongs necessary for admissibility, it should have been excluded from trial.

### A.    Knoxville anniversary trip.

Christy Diamond testified that at a hotel on an anniversary trip to Knoxville, when attempting to get a room reservation, Mr. Diamond told the hotel employee that he was with the U.S. Marshals. She walked away from the conversation. She said that Mr. Diamond later told her he got a comped suite due to his representation. Christy Diamond could not recall if this prior act took place six or seven years ago, nor could she recall if it was the anniversary of their wedding or relationship. She admitted that she was not privy to the bulk of the conversation at the hotel in Knoxville because she walked away from the counter. At the pretrial conference, the court made no explanation as to why it deemed this evidence admissible. It should not have been. It was not relevant to the events of August 23, 2018, and not reliable.

### B.    RV Camper's Inn.

Christy Diamond testified that she and Mr. Diamond went on a family trip to an RV park in Panama City Beach, Florida. She said that the camper spots were sold out, and Mr. Diamond went inside of the Camper's Inn to try to get a spot. She said that when he came out, he told her he obtained a spot by telling the employee he was a U.S. Marshal. She could not recall if this trip occurred three or four years ago, or if the trip took place on Memorial Day or Labor Day weekend. She admitted that she was

not present for the conversation at the Camper's Inn at all since she did not go inside of the Inn. At the pretrial conference, the court ruled that this evidence "does not go into character but goes into intent and knowledge," without further explanation as to how an alleged prior claim of being a U.S. Marshal three or four years prior was related to the charges of acting as an air marshal. Because this evidence was not relevant to the events at issue at trial and the account was unreliable, the testimony should have been excluded.

### C. Home Depot.

According to Christy Diamond, Mr. Diamond asked a Home Depot employee for a military discount on two prior occasions. Mr. Diamond did not present a badge to the Home Depot employee, nor did he purport himself to be an air marshal. At the pretrial conference, the court deemed this evidence relevant without further explanation. A military discount is unrelated to the false impersonation acts Mr. Diamond was accused of in this case. It speaks to no issue of fact at trial, and the allegations were remote and unreliable. This evidence should not have been admitted.

### D. The laundry room incident.

Christy Diamond testified that she found the fake air marshal badge while doing Mr. Diamond's laundry. She says she confronted him about the badge, and he joked that he could use it for discounts. Christy Diamond could not recall if the conversation was in person or on the phone, and she did not provide a specific date in which this occurred. At the pretrial

conference, the court made no explanation as to why this evidence was admissible. Mr. Diamond's alleged statement that "he *could* use it for discounts" is not an admission of wrongdoing. Even if it were, it is not relevant to the facts at issue, nor is it reliable. Like the other prior alleged acts, this evidence should not have been admitted.

E.    **Ms. Diamond's 404(b) testimony should have been excluded.**

Christy Diamond's testimony as to each of these alleged incidents was not relevant, not credible, and not admissible. Again, she never saw Mr. Diamond use the badge during any of the alleged prior acts, nor did she ever witness him identify himself as an air marshal. As a threshold matter, the evidence did not satisfy the second prong of the test for admissibility: there was not sufficient evidence for a jury to conclude these events actually took place. She did not provide any specific dates or years the prior acts occurred, and she admitted to not being present for most of the alleged conduct. What she did provide was many question marks.

The evidence also did not satisfy the third prong of the test for admissibility, as this testimony provided no additional evidence necessary for the jury and simply disparaged Mr. Diamond's character. The admission of the 404(b) testimony served solely as propensity evidence and resulted in undue prejudice to Mr. Diamond. It was unfairly prejudicial to Mr. Diamond because the evidence could mislead the jury to believing that, if Mr. Diamond committed overt acts involving false personation on other occasions, that was sufficient to satisfy the government's burden in this

52

case. Mr. Diamond argued that this evidence should have been excluded under Federal Rules of Evidence 404(b) and 403, and this request should have been granted. (*See* Doc. 124 at 14-18; Doc. 136 at 1-4). The court abused its discretion in admitting this evidence, warranting reversal and remand.

## CONCLUSION

For the reasons set forth above, Mr. Diamond respectfully requests that this Court vacate his convictions and remand for further proceedings.

REBECCA SHEPARD
TAKIYA J. WHEELER
Counsel for Jay Diamond

## CERTIFICATE OF COMPLIANCE AND SERVICE

This is to certify that the foregoing brief is in compliance with Federal Rule of Appellate Procedure 32(a)(5), (6) because it has been prepared in Book Antiqua 14 point, a proportionally-spaced typeface, using the Microsoft Word 2016 word processing software. Moreover, this brief also complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it includes no more than 12,789 words, according to the same software. Finally, on the date set forth below, counsel uploaded this brief to the Court's web site, which promptly served opposing counsel:

> MIGUEL R. ACOSTA
> LAWRENCE R. SOMMERFELD
> Assistant United States Attorneys
> United States Attorney's Office
> United States Courthouse
> 75 Ted Turner Drive, SW
> Atlanta, Georgia 30303

January 24, 2023.

> REBECCA SHEPARD
> TAKIYA J. WHEELER
> Federal Defender Program, Inc.
> 101 Marietta St., NW, Suite 1500
> Atlanta, GA 30303
> (404) 688-7530
> Rebecca_Shepard@FD.org
> Takiya_Wheeler@FD.org
>
> Counsel for Jay Diamond

54